UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON L. JACKSON,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

                                         /

Case No.  1:14-cv-1157

HON. JANET T. NEFF

**OPINION**

       This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Aaron Jackson seeks review of the Commissioner's decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

**STANDARD OF REVIEW**

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the

Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 26 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 10, 34). He obtained his GED, and has no record of substantial gainful activity. (Tr. 36). Plaintiff applied for benefits on February 2, 2012, alleging that he had been disabled since August 1, 2007, due to congestive heart failure and high blood pressure. (Tr. 64, 134–39). Plaintiff's application was denied on April 30, 2012, after which time he requested a hearing before

an ALJ. (Tr. 81–84). On April 8, 2013, Plaintiff appeared with his counsel before ALJ Luke Brennan with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 28–53). In a written decision dated July 23, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 10–22). Thereafter, the Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1–4). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the durations requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

The Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Brennan determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, February 1, 2012. (Tr. 15). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) cardiomyopathy with history of defibrillator placement; (2) obesity; and (3) sleep apnea. (Tr. 15). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 15–16). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments:

> to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and walk for two hours in an eight-hour workday and is able to sit for six hours in an eight-hour workday. The claimant can occasionally climb ramps and stairs. The claimant should avoid even moderate exposure to hazards (such as moving and dangerous machinery, unprotected heights, etc.). The claimant should avoid even moderate exposure to pulmonary irritants, including fumes, dusts, gases, and odors.

(Tr. 16). The ALJ next determined that Plaintiff had no past relevant work. (Tr. 20–21).

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See*

*Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 2,600 regional jobs[2] which an individual similar to plaintiff could perform (Tr. 49–50). The VE identified the positions of assembler, inspector, and hand packager as jobs which Plaintiff would be able to perform. (Tr. 49–50). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

### DISCUSSION

Plaintiff's statement of errors presents the following claims:

1. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physician and by wrongly interpreting Social Security regulations in doing so.

2. The ALJ committed reversible error by finding Plaintiff had limited credibility due to his lack of compliance with treatment because the Judge did not consider whether Plaintiff had the financial ability to afford treatment.

3. The ALJ committed reversible error because he used improper boilerplate language to justify his decision.

4. This case should be remanded because Plaintiff had inadequate representation at his hearing.

5. Plaintiff is entitled to at least a closed period of benefits despite the post-hearing evidence.

(Dkt. #13, PageID 605).  The Court will discuss the issues below.

### 1. Treating Physician

Plaintiff first argues that he is entitled to relief because the ALJ improperly discounted the opinion of his treating physician, Dr. David Langholz. Specifically, Plaintiff asserts that the ALJ failed to properly assess Dr. Langholz's May 22, 2012 opinion that Plaintiff "has been

---

[2] At the administrative hearing, the VE stated that by regional jobs, he meant jobs within the State of Michigan. (Tr. 48).

seen in the Bradford office of West Michigan Heart since 2010. He has been disabled since then (and probably previous to this) due to issues of cardiomyopathy, and having an implantable defibrillator." (Tr. 500). The ALJ discounted this statement, in part, on the ground that such was a opinion that Plaintiff was disabled which is a matter reserved to the Commissioner. (Tr. 20). Plaintiff alleges that he is entitled to relief because Dr. Langholz's opinion was a "medical opinion" entitled to controlling weight. The Court is not persuaded.

A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). While medical opinions offered by treating sources are generally accorded deference, statements that a claimant suffers from unspecified limitations or is disabled or unable to work, as here, are entitled to no deference because the determination of disability is a matter left to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1).

Because the statement in question is not properly characterized as a medical opinion, the ALJ properly disregarded such. *See, e.g., West v. Astrue*, 2011 WL 825791 at *8 (E.D. Tenn., Jan. 19, 2011) ("it was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)"); *Koller v. Astrue*, 2011 WL 5301569 at *5 (E.D. Ky., Nov. 3, 2011) (the ALJ is not required to defer to statements by physicians concerning matters reserved to the Commissioner). Plaintiff cites to *Johnson v. Comm'r of Soc. Sec.* for the proposition that as a specialist, Dr. Langholz's medical opinion was entitled to more weight than a non-specialist. 652 F.3d 646, 651 (6th Cir. 2011). *Johnson* is distinguishable, however,

6

because as the Court has noted, Dr. Langholz did not give a medical opinion which could be given controlling weight. Accordingly, Plaintiff's claim fails.

### 2. Plaintiff's Subjective Allegations

Plaintiff testified at the administrative hearing that he was unable to work due to his various impairments. The ALJ discounted Plaintiff's testimony for many reasons, including Plaintiff's refusal to take his medications as prescribed and for not following his doctors' direction that he end his marijuana use. Plaintiff argues that because he was unable to afford his medications, the ALJ's reliance on his failure to take his medications was inappropriate.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (*citing Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (*citing Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (*citing Walters*, 127 F.3d at 531); *see also*, *Heston*, 245 F.3d at 536. ("It is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

A claimant's failure to seek medical treatment over an extended period of time is often a factor to be considered against the claimant's assertion of a disabling condition. *See Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant

will seek examination or treatment" and "[a] failure to do so may cast doubt on the claimant's assertions of disabling pain."); *see also* SSR 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements, 1996 WL 374186, at *7 (July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints...."). SSR 96–7p states that before drawing an adverse inference from the claimant's failure to seek or pursue regular medical treatment, an ALJ must first "consider[ ] any explanations the individual may provide or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7.

The record shows that in July and August of 2010, Plaintiff stated he was unable to afford his medication. (Tr. 344, 348). However, during the July visit, the record also documents Plaintiff's own admission that he decided not to take other medications on his own volition, and not because of any financial difficulty. (Tr. 348) (Plaintiff "was also called in a prescription for Simvastatin which he's taken in the past; the patient states he just decided not to take that anymore. Also he was on Tekturna at his last office visit, which patient stopped on his own thinking it caused headaches."). Plaintiff's statement that he "just decided not to" take his medication and stopped his medication on his own provides substantial evidence supports the ALJ's conclusion that Plaintiff was not following his doctor's instructions regarding his medications. This is bolstered by a January 11, 2011 treatment record which noted Plaintiff had been noncompliant with his medication. (Tr. 393). Finally, the ALJ's decision expressly mentioned that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and *96-*

9

*7p.*" (Tr. 16) (emphasis added). In doing so, the ALJ indicated he understood his responsibility to consider alternative explanations for Plaintiff's failure to take his medication.

Plaintiff also argues that the ALJ erred in discounting his credibility based on his marijuana use. The record shows that in the October of 2010, Plaintiff's defibrillator fired after he used marijuana, alcohol, and engaged in sexual intercourse. (Tr. 359). Plaintiff's doctors thereafter encouraged him to refrain from drug use. (Tr. 357). In June 2011, Dr. Langholz noted that Plaintiff reported he had ended his marijuana use. (Tr. 356). However, separate office treatment notes document that marijuana abuse was noted from January 11, 2011 through the date of the note, June 12, 2012. (Tr. 510). During the June 12, 2012 evaluation, Plaintiff reported he smoked "1-2 joints a day." (Tr. 517). The ALJ stated "although the claimant was repeatedly encouraged to stop using marijuana due to its counterproductive nature of the substance, the claimant was using marijuana at least until June 2012." (Tr. 18). The ALJ's conclusion that Plaintiff did not follow the direction of his doctors is supported by substantial evidence.

In a related argument, Plaintiff asserts that he is entitled to relief because the ALJ relied on "meaningless boilerplate" in discrediting Plaintiff's subjective allegations. Specifically, Plaintiff points to the following language from the ALJ's opinion:

> [a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 17). Plaintiff argues that the ALJ's reliance on "meaningless boilerplate" demonstrates that the ALJ's opinion is not supported by substantial evidence. In support of this argument, Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir.2012), in which the Seventh Circuit criticized the use

of language similar to that above as "meaningless boilerplate." *Id.* at 645. As has been recognized, however, the shortcoming with the ALJ's decision that was at issue in *Bjornson* was that the ALJ in that case "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 1703894 at *4 (W.D. Mich., Apr.19, 2013). On the other hand, where such boilerplate is accompanied by appropriately detailed and focused analysis, consistent with the aforementioned standard, the presence of the offending boilerplate does not constitute grounds for relief. *Id.* Here, the ALJ discussed the evidence of record at length and detailed his rationale for discounting Plaintiff's subjective allegations. The Court, therefore, rejects this argument.

### 3. Full and Fair Hearing

Next, Plaintiff asserts that he is entitled to relief because the attorney who represented him at the administrative hearing did not provide competent representation. Specifically, Plaintiff asserts that his previous attorney failed to obtain records that may have demonstrated Plaintiff met Listing 4.02 of the Listing of Impairments. (Dkt. #13, PageID 610–11). Plaintiff cites to a September 19, 2012, determination from a state agency medical consultant, Dr. Craig Billinghurst.  Dr. Billinghurst evaluated the record and affirmed the decision made by the single decision-maker that Plaintiff was not disabled. (Tr. 502). As the document notes, however, Dr. Billinghurst did not have the entire record, and Plaintiff's then-attorney did not respond to requests for records through June, 2012. (Tr. 502).

Plaintiff was entitled to a "full and fair" hearing before the ALJ. *See, e.g.*, *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir.2010).  Plaintiff has failed to demonstrate that he was deprived of this right.  ALJs are not bound by the decision of the Commissioner. *Threets v.*

*Comm'r of Soc. Sec.*, No. 14-10291, 2015 WL 1510720, at *2 (E.D. Mich. Mar. 9, 2015). Additionally, the ALJ also reviewed the documents that Dr. Billinghurst did not review. (Tr. 27). Plaintiff has identified no authority supporting how, in light of the above, he was deprived of a full or fair hearing. Furthermore, Plaintiff does not argue, and the record does not support, a finding that he actually meets Listing 4.02.[3] Accordingly, this argument is rejected.

### 4. New Evidence

Plaintiff finally mentions two pieces of evidence that were presented to the Appeals Council, but were not before the ALJ.[4] When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Under sentence six, "[t]he court ... may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior

---

[3]*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02.

[4]These are marked in the record as Exhibits 16F and 17F. Plaintiff is incorrect that the ALJ reviewed Exhibit 16F. A review of the ALJ's list of exhibits shows that the list of exhibits reviewed by the ALJ ended at Exhibit 15F. (Tr. 27).

proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff argues that the ALJ should consider Exhibit 16F, and the last sentence of Plaintiff's brief contains a passing request for alternative relief in the form of remand. (Dkt. #13, PageID 610–11). However, there is no developed argument or legal authority supporting Plaintiff's request for remand under sentence six. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014). Plaintiff "develops no argument to support a remand, and thus the request is waived." *Curler v. Comm'r*, 561 F. App'x 464, 475 (6th Cir. 2014).

Even assuming that this issue had not been waived, Plaintiff has not addressed, much less satisfied his statutory burden for, remanding this matter to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). First, Exhibit 16F is not new because it was generated before the July 23, 2013 date of the ALJ's decision. (Tr. 544–48). *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Second, in order to show good cause, the moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Plaintiff has not addressed, much less carried, his burden of demonstrating good cause. Finally, in order to establish materiality, Plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See id.*; *see also Deloge v. Comm'r of Soc. Sec.*, 540 F. App'x 517, 519 (6th Cir. 2013). Here, Plaintiff also has failed to carry his burden. The note Plaintiff seeks to include states that he "can perform 8 hours of active work." (Tr. 544).

Plaintiff has failed to show how this statement would lead the ALJ to make a different conclusion or even how the conclusion in the note is inconsistent with his RFC. Plaintiff has therefore failed to demonstrate that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. Accordingly, to the extent Plaintiff asks for a sentence-six remand, the request is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: November 23, 2015                    /s/ Janet T. Neff
                                            JANET T. NEFF
                                            United States District Judge